## 45110. MAYNE v. THE STATE.

(365 SE2d 270)

MARSHALL, Chief Justice.

The appellant, Diane Irwin Mayne, as well as Dennis Mark Langley and William Lewis Thompson, was indicted for the malice murder of the appellant's ex-husband, Richard Eugene Mayne. She appeals her conviction with a life sentence.[1] We affirm.

The appellant, who had custody of the four-year-old child of hers and her ex-husband's, had been held in contempt of court on three prior occasions for her lack of cooperation in her ex-husband's child-visitation rights. She was informed that if there was noncompliance with the visitation agreement again, Mr. Mayne would be given custody of the child, and she did not believe that he would be a good father to her son. Prior to a lengthy child-visitation period with Mr. Mayne scheduled for the July 4, 1986, holiday, the appellant obtained $5,000 cash from a bank, ostensibly for a home-improvement loan. She gave $2,500 to a neighbor, James Mills, as a down payment to have her husband killed, preferably before July 4, 1986. When Mills did not act on her request, she gave co-indictee Thompson $2,500 as a down payment for the same purpose on July 25, 1986. On August 12, she requested this money back, indicating that someone else had been contacted. That same day, co-indictees Thompson and Langley discussed with each other their relationship with the appellant and her ex-husband. Shortly before the homicide, two suspicious, intoxicated males ostensibly seeking water were turned away by the victim at his garage apartment. Thereafter, an automobile fitting the description of that of Langley's wife, containing three persons, was seen driving around the victim's block 10-15 times. A male exited the car, a "big noise" was heard, and the male returned to the car, which drove away. The victim was killed by a gunshot wound to the head, by either a .38- or .357-caliber weapon. On August 20, 1986, the appellant told witness Mills that "someone by the name of Mark had did [sic] the job for her." During the trial, she testified that a deposit of $1,100 had been given to Mark, and that $1,400 additional money was needed to complete the payment. At the Fairburn Police Department, the appellant initiated a conversation with a civilian radio operator, Kimberly Peavy, in which she stated, "I had it done," and "I did not pull the trigger, . . . but I had [the victim] killed."

1. Enumerated error 5 is the trial court's denial of the appellant's motions for directed verdict of acquittal. The appellant's statements

---

[1] The crime occurred on August 14, 1986. The appellant was convicted and sentenced on February 2, 1987. Notice of appeal was filed on February 19, 1987. The transcript was filed in the trial court on September 22, 1987. The appeal was docketed in this Court on October 19, 1987, and orally argued on January 12, 1988.

to various persons that she had paid to have her ex-husband killed were direct evidence of her guilt. *Brown v. State*, 251 Ga. 598 (4) (308 SE2d 182) (1983); *Winford v. State*, 213 Ga. 396 (2) (99 SE2d 120) (2) (1957); OCGA § 24-1-1. These statements were corroborated by the other evidence adduced at the trial, as set forth hereinabove, including relationships, telephone calls and statements among the three co-indictees, indicative of a conspiracy to murder the victim. Based on all of the above, there was sufficient evidence for a rational trier of facts to find the appellant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In enumerated errors 1, 2, 8 and 11, the appellant challenges the denial of her motion for severance and the failure to exclude from evidence statements made by Langley to co-indictee Thompson and Keith Miles, she contending that no conspiracy had been established.

" 'Hearsay statements made by a conspirator during the course of a conspiracy, including the concealment phase, are admissible against all conspirators . . . [Cits.]' 'The question of the existence of a conspiracy is ultimately for the jury to determine . . . [Cit.] The existence of a common design or purpose between two or more persons to commit an unlawful act may be shown by direct or circumstantial evidence . . . [Cits.]' [Cit.]" *Harris v. State*, 255 Ga. 500, 501 (340 SE2d 4) (1986). As we have held in Div. 1, supra, there was sufficient evidence to authorize the finding of a conspiracy to murder.

"It is discretionary with the trial judge as to whether to jointly or separately try defendants who are jointly indicted for a capital offense when the state has waived the death penalty. [Cit.] The trial judge's denial of the motion to sever will not be disturbed unless the defendant can make a clear showing of prejudice. [Cit.] '(T)he burden is on the defendant . . . to do more than raise the possibility that a separate trial would give him a better chance of acquittal.' [Cit.]" *Mulkey v. State*, 250 Ga. 444 (1) (298 SE2d 487) (1983). Here, the appellant's own statements were the most damaging, and, since the allegedly objectionable statements were admissible under the co-conspirator exception to the hearsay rule, the record demonstrates that the appellant has not suffered prejudice or actual harm as a result of the joint trial.

3. Enumerated errors 4 and 10 complain of the admission in evidence of the appellant's custodial, incriminating statements. The appellant had one arm handcuffed to a filing cabinet in the police station for her own safety. Kimberly Peavy, a civilian radio operator for the police department, was seated with her back to the appellant, working on a computer. When the appellant saw the name of co-indictee Thompson on the computer screen, she initiated a conversation with Ms. Peavy, commenting that "that's who they were going to pick

up," pointing at the screen. In response to Ms. Peavy's asking what she was talking about, the appellant stated that he was the one who helped her kill her husband. When the witness asked if the appellant had killed her husband, the latter responded that she had not pulled the trigger, but that she had had it done and it was worth it.

We hold that the statements in question were not elicited by interrogation/questioning or its functional equivalent, but were clearly voluntary, hence not barred by the holding in *Miranda* nor requiring a *Jackson v. Denno* hearing. See *Cole v. State*, 254 Ga. 286 (3) (329 SE2d 146) (1985) and cits.

4. It was not error, as alleged in Enumerations 3 and 9, to allow in evidence statements made by the appellant directly to witness James Mills, merely because Mills had been wearing a "body bug" when the statements were made to him, and the assistant district attorney had stated that no wiretap evidence would be introduced (which was not).

5. Enumeration 6 contends that the trial court's use, in his charge, of several illustrations using facts somewhat analogous to those in the present case, was an impermissible expression of opinion as to what would or would not be sufficient circumstantial evidence to carry the state's burden of proof. The use of these illustrations to explain to the jury the difficult concept of the differences between direct and circumstantial evidence, was not improper, especially since the jury was charged as to the law of direct and circumstantial evidence, the jury was not advised as to which facts occurred here, and the court instructed them that nothing he had said during the trial was intended to intimate, hint, or suggest which side should prevail.

6. The charge on conspiracy, complained of in enumerated error 7, was justified by the evidence.

7. The out-of-court statements of co-conspirators made during the pendency of the conspiracy were properly admitted in evidence, the fact of the conspiracy having been proved by both direct and circumstantial evidence. OCGA § 24-3-5.

*Judgment affirmed. All the Justices concur, except Bell, J., who concurs in the judgment only.*

DECIDED MARCH 3, 1988.

*Tony H. Hight,* for appellant.
*Lewis R. Slaton,* District Attorney, *Harvey W. Moskowitz, R. Andrew Weathers,* Assistant District Attorneys , *Michael J. Bowers,* Attorney General, *Mary Beth Westmoreland,* Assistant Attorney General, for appellee.