## A90A0070. THE STATE v. GRIMES.
(395 SE2d 42)

CARLEY, Chief Judge.

Appellee was indicted for possession of cocaine with intent to distribute, possession of a firearm by a convicted felon, and carrying a concealed weapon. He filed a pre-trial motion to suppress on the ground that "no probable cause existed to suspect [him] of any crime and/or seize his person or property."

At the hearing on the motion to suppress, the only witnesses who testified were the two officers who had arrested appellee. Their unrebutted testimony was as follows: At approximately 6:30 p.m., the officers drove into the parking lot of an apartment complex. They were in a marked police car and were en route to a location in the apartment complex where they were to provide backup for an undercover drug buy. While driving by one of the buildings in the complex, the officers observed appellee walking toward a parked vehicle. When appellee saw the officers in their marked police car, his reaction was to turn away quickly and walk back toward the apartment building. He then tried to gain entry to a downstairs unit, but was unsuccessful. As the police car moved closer, appellee ran up the stairs to the second floor of the apartment building, where he again tried unsuccessfully to gain entry to another unit. Based upon appellee's suspicious actions, the officers parked and left their patrol car to investigate. As they approached the apartment building, they saw appellee remove a shiny silver object from the waistband of his pants and drop that object to the floor. One of the officers drew his gun and walked up the stairway only as far as the landing between the two floors. While he was standing on the landing, this officer saw that there was a pistol on the floor near appellee. The officer then pointed his gun at appellee and or-

dered him to raise his hands. Meanwhile, the other officer had continued up the stairs and, upon arriving at the second floor, he also drew his gun and pointed it at appellee. The officer who had remained on the landing informed the officer who had continued up the stairs that there was a pistol on the floor. The pistol was then retrieved and appellee was arrested for carrying a concealed weapon. A search of appellee revealed a set of car keys. Apparently without giving appellee the *Miranda* warnings, the officers questioned him about the keys. Appellee stated that the keys were to the vehicle that he had been walking toward when he had first been observed by the officers. When appellee was asked for permission to search the vehicle, his reply was "go ahead." A search of the vehicle revealed a holster, ammunition, and cocaine.

On this evidence, the trial court granted appellee's motion to suppress and the State appeals.

1. Flight at the approach of law officers is a strong indicium of mens rea. *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891) (1989). Indeed, flight coupled with other circumstances has been held to establish probable cause for an immediate arrest. *Scott v. State*, 193 Ga. App. 74 (387 SE2d 31) (1989); *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989). However, even assuming that the other circumstances which were present in the instant case were not such as to establish probable cause for appellee's immediate arrest, his flight "was nevertheless clearly a sufficiently suspicious . . . response to the [approach of law officers] so as to give [them] at least a reasonable suspicion of appellee's criminal activity and to warrant further investigation." *State v. Webb*, supra at 4 (1). The officers were at the apartment complex for the very reason that drug activity had been reported at that location. When they were seen by appellee, he abruptly turned and unsuccessfully attempted to enter not one but two different units. The officers were clearly authorized to investigate this suspicious activity. " 'The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow . . . a criminal to escape.' [Cit.]" *State v. Webb*, supra at 4 (1).

Appellee urges that the officers' investigatory reaction to his suspicious activity became an illegal "seizure" of his person when at least one of the officers drew his gun while approaching the apartment building and before walking up the stairway. It is undisputed, however, that no gun was drawn until *after* the officers had seen appellee remove a shiny silver object from the waistband of his pants. Under these circumstances, it was more than reasonable for the officers to suspect that appellee might be armed. Even though the officers had also seen appellee drop the shiny silver object to the floor, there was no reason for them not to suspect that he might still be armed with

some weapon or that he might retrieve the shiny silver object by the time that they reached the top of the stairway. Moreover, the confrontation was occurring in an apartment complex where drug activity had been reported. "An investigatory stop is not automatically an arrest simply because an officer is armed. . . . [Cits.] It is often necessary for the police to approach a person with a drawn weapon in a suspiciously dangerous situation in order to protect the physical well-being of both police officers and the public." *Franklin v. State*, 143 Ga. App. 3, 5 (2) (237 SE2d 425) (1977). Under the undisputed circumstances of the instant case, the mere fact that at least one of the officers had drawn his weapon prior to the actual confrontation with appellee was certainly reasonable, and clearly did not, in and of itself, transform the officers' authorized investigatory reactions to appellee's suspicious activity into an illegal arrest. " 'An officer may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others. The usual police response will be to conduct a frisk, patting the individual's clothing in search of a weapon. (Cits.) Where an immediate frisk is not feasible, however, the officer will be justified in approaching the suspect with weapon drawn or at the ready. (Cits.) The key question in all cases remains whether the protective measures taken by the officer were reasonable under the circumstances.' [Cits.]" *Edwards v. State*, 165 Ga. App. 527, 528 (301 SE2d 693) (1983).

There was no "seizure" of appellee's person until the officer who was standing on the landing actually pointed his gun at appellee and ordered him to raise his hands. It is undisputed that this did not occur until *after* the officer had seen that the shiny silver object that appellee had removed from the waistband of his pants was in fact a pistol. The officers observations established probable cause to believe that appellee had committed the offense of carrying a concealed weapon, and authorized the immediate arrest of appellee for the commission of that offense and the immediate seizure of the pistol as evidence of his guilt. It follows that the trial court erred in granting appellee's motion to suppress the pistol.

2. It is unclear what effect the trial court's erroneous suppression of the pistol may have had upon its determination also to suppress the holster, ammunition, and cocaine that were found in the subsequent search of the vehicle. As we have held in Division 1, the arrest of appellee for commission of the crime of carrying a concealed weapon was not unauthorized. Accordingly, the items that were seized in the subsequent search of the vehicle would *not* be subject to suppression as the "poisonous" fruit of appellee's illegal arrest and, if the trial court suppressed those items on this basis, it erred. Those items would be subject to suppression *only* if the State failed to prove that

the search and seizure of the vehicle that was conducted after the appellant's authorized arrest was not otherwise justified under any exception to the warrant requirement. Since it does not appear that the trial court's ruling on the subsequent search and seizure was unaffected by its erroneous ruling on the initial seizure of appellee and the pistol, the case must be remanded for a new suppression hearing to determine whether the subsequent search and seizure was justified under any exception to the warrant requirement, including but not necessarily limited to the consensual search exception. See *Atkins v. State*, 254 Ga. 641 (331 SE2d 597) (1985); *State v. Peacock*, 178 Ga. App. 96 (342 SE2d 364) (1986); *State v. Waters*, 170 Ga. App. 505, 507 (2) (317 SE2d 614) (1984).

*Judgment reversed and case remanded with direction. McMurray, P. J., and Sognier, J., concur.*

DECIDED MAY 29, 1990.

*Robert E. Wilson, District Attorney, Donald C. English, Assistant District Attorney*, for appellant.
*Bruce S. Harvey*, for appellee.