## A96A1838. DAVIS v. THE STATE.
### (484 SE2d 655)

RUFFIN, Judge.

A jury found Jerome Davis guilty of two counts of aggravated assault and not guilty of "entering an automobile." The court sentenced Davis to nine years on each count of aggravated assault, to be served concurrently. Davis appeals, challenging the sufficiency of the evidence, the denial of his motion to suppress, the jury charge, and his sentence. We affirm.

1. Davis asserts that the evidence was insufficient to support his convictions on two counts of aggravated assault. We disagree.

" 'On appeal the evidence must be viewed in the light most favorable to the verdict, and [Davis] no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cit.]' [Cit.]" *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) (1994).

Viewed in this light, the evidence shows the following. On the evening the offenses were committed, Douglas Paxton, an employee of the Center Stage Theater, observed two men in the theater's parking deck whom he suspected were breaking into a car. Paxton returned to the theater and informed Bill McCook, a security guard, of his observations. When Paxton and McCook returned to the parking deck, they noticed that the two suspects had left the area and were standing across the street. Paxton and McCook ran toward the two suspects, who then fled on foot. As Paxton and McCook chased the suspects, both suspects turned around and fired gunshots at them.

Paxton testified that after the shooting, he ran back to the theater and informed Atlanta Police Officer John Drummond of what occurred. As Officer Drummond and Paxton were driving around the area searching for the two suspects, Paxton thought he recognized one of them walking down the sidewalk. When Paxton and Officer Drummond approached the individual in their car, he looked at them, then turned away and put his hands in his pockets. Officer Drummond testified that due to concerns for his safety, which were based on the reported shooting, he exited the car with his gun drawn

and told the individual, who was later identified as Davis, to remove his hands from his pockets and turn around. When Davis turned around Officer Drummond "observed a small caliber weapon sticking out of his right coat pocket." A subsequent search revealed another handgun stuck in Davis' belt. Both Paxton and McCook positively identified Davis as the person who shot at them.

The foregoing evidence was sufficient for a rational trier of fact to find Davis guilty beyond a reasonable doubt of two counts of aggravated assault. See id.; *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Davis asserts that the trial court erred in denying his motion to suppress evidence of the guns he possessed at the time of his stop. Davis argues that the evidence should have been suppressed because Officer Drummond's stop was "overly intrusive under the circumstances, and lacking in reasonable articulable suspicion." We disagree.

" '[A] police officer may make a brief, investigatory stop, provided the officer has a reasonable, articulable suspicion that the person stopped has been, is, or is about to be engaged in criminal activity, and the nature and extent of the detention is minimally intrusive. (Cit.)' " *Chaney v. State,* 207 Ga. App. 72 (427 SE2d 63) (1993). In this case, Officer Drummond was suspicious that Davis committed the shooting and possible car break-in because he matched the general description of the perpetrator and because Paxton had informed him that, although he was not sure, Davis looked like the person who shot at him. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow . . . a criminal to escape." (Citation and punctuation omitted.) *State v. Grimes,* 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990). Accordingly, despite Paxton's somewhat tentative identification, Officer Drummond was permitted to stop Davis to determine whether he committed the witnessed offenses.

We also find that Officer Drummond's conduct during the stop was not overly intrusive simply because he had his weapon drawn when he exited the car. " 'An investigatory stop is not automatically an arrest simply because an officer is armed. . . . (Cits.) It is often necessary for the police to approach a person with a drawn weapon in a suspiciously dangerous situation in order to protect the physical well-being of both police officers and the public.' [Cit.]" Id. at 775.

As stated above, in this case Officer Drummond testified that he exited the car with his gun drawn due to concerns for his safety, which were based on the reported shooting. Under such circumstances, Officer Drummond was permitted to take appropriate action to protect himself and the public. Id. And, although "[t]he usual

police response will be to conduct a frisk, . . . [w]here an immediate frisk is not feasible, . . . the officer [is] justified in approaching the suspect with weapon drawn or at the ready. The key question in all cases remains whether the protective measures taken by the officer were reasonable under the circumstances." (Citations and punctuation omitted.) Id. Because of the prior shooting, Officer Drummond was justified in believing that Davis was possibly armed and dangerous. Officer Drummond was subsequently authorized to arrest Davis upon observing the gun protruding from his pocket. See id.

Accordingly, we find no error in the denial of Davis' motion to suppress.

3. Davis asserts that the jury instructions "taken as a whole denied due process, shifted the burden to appellant and negated any charge on reasonable doubt." In support of his assertion, Davis cites two examples of purportedly erroneous charges.

During the charge on circumstantial evidence, the trial court gave the jury an example of what constitutes such evidence. Davis contends that the illustration was prejudicial because it was "practically identical to the facts of the current case. . . ." We disagree. Although the illustration involved a shooting, as in the present case, it was not "practically identical." Furthermore, the use of such "illustrations to explain to the jury the difficult concept of the differences between direct and circumstantial evidence, was not improper, especially since the jury was charged as to the law of direct and circumstantial evidence, the jury was not advised as to which facts occurred here, and the [judge] instructed them that nothing he had said during the trial was intended to intimate, hint, or suggest which side should prevail." *Mayne v. State*, 258 Ga. 36, 38 (5) (365 SE2d 270) (1988).

Davis also contends the jury charge was erroneous because the court instructed the jury that "[y]our verdict must be unanimous. It's no such thing as a majority verdict. Each of you must agree to the verdict, any verdict that you return." Davis contends that such language required each juror to "concede to the majority opinion." However, as Davis acknowledges, the jury charges must be read as a whole. *Hambrick v. State*, 256 Ga. 688 (3) (353 SE2d 177) (1987). The transcript shows that following the quoted language, the court instructed the jurors "that if you find that you differ about what your verdict should be on a certain point that it's important for you to discuss it, to deliberate with one another. . . . [B]e willing to listen [to your fellow jurors] in their argument all with an effort to reach a unanimous verdict, if possible." We find that, read as a whole, the court's charge was not coercive "in that it caused any juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors. . . ." (Citation and punctua-

tion omitted.) *Harris v. State*, 263 Ga. 526, 528 (6) (435 SE2d 669) (1993).

4. Finally, Davis contends that the trial court improperly sentenced him. Specifically, Davis contends that the record shows he was found guilty only of two counts of simple assault, but that he was sentenced for two counts of aggravated assault. In support of his argument, Davis cites to a copy of the jury's verdict, which was handwritten on the indictment and provides: "[w]e the jury find Mr. Davis guilty of 2 counts of Assault and not guilty of entering an auto." Although Davis is correct that the verdict does not specifically state that he was found guilty of aggravated assault, we conclude that such was the intent of the jury's verdict.

OCGA § 17-9-2 provides in part that "[v]erdicts are to have a reasonable intendment, are to receive a reasonable construction, and are not to be avoided unless from necessity." We must construe verdicts "in the light of the pleadings, the issues made by the evidence, and the charge of the court." (Citation and punctuation omitted.) *Reed v. State*, 87 Ga. App. 154 (1) (73 SE2d 223) (1952).

The indictment here shows that Davis was charged with *only* aggravated assault and not also with the lesser included offense of simple assault. Similarly, we find, and Davis acknowledges in his appellate brief, that "[u]nder the facts presented in the current case, the jury could only have found that [he] was either guilty of [aggravated assault] or no offense." Finally, the court charged the jurors that they could only find Davis guilty of aggravated assault as it was charged in the indictment. Specifically, the court instructed the jury that the State charged Davis with the "particular offenses named in the indictment, and he denies it. That sets the issue that is to be decided between the state and the defendant in this case." The court further charged the jury that "any verdict you may render in this case should be arrived at from the facts as you find them to be, applying thereto the law as given you in this charge." The court then charged the jury on the laws concerning aggravated assault and again stated that the State charged Davis with assaulting the victims "by the use of a deadly weapon, a pistol." Finally, the court instructed the jury that as to each count of the indictment, they could find him either guilty or not guilty and that "it's up to you if you just want to write your verdict in one sentence or two sentences or three sentences. However you want to do it, it's up to you as long as it indicates that each particular count has been dealt with."

As to the aggravated assault charge, the only alternatives given to the jury in this case were to find Davis guilty of aggravated assault or no offense at all. In writing its verdict, the jury simply followed the court's instructions by indicating which particular counts it was dealing with. Although using the term "assault" left some ambiguity, it

was sufficient to indicate that the jury found Davis guilty of the two counts charging aggravated assault. Under the above-stated circumstances, this is the only reasonable construction of the jury's verdict.

Finally, we note that the following colloquy between Davis' counsel, the court, and a juror, which occurred after Davis polled the jury, also indicates that the jury intended to convict Davis of aggravated assault: "[Davis' counsel]: Yes, your honor, I notice the writing on the verdict form said find the defendant guilty of assault. The charge was aggravated assault. The Court: Yes, I assume that's what they meant. The Juror: Yes, your honor."

Accordingly we find that the jury found Davis guilty of two counts of aggravated assault and that the trial court did not err in sentencing him for these offenses.

*Judgment affirmed. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 10, 1997 —
RECONSIDERATION DENIED MARCH 21, 1997.

*Marshall W. Taylor*, for appellant.

*Lewis R. Slaton, District Attorney, Leonora Grant, Kirby Clements, Jr., Juliette O. W. Scales, Assistant District Attorneys*, for appellee.