## A00A1861. SHAW v. THE STATE.
### (545 SE2d 399)

MIKELL, Judge.

Harold Arthur Shaw was charged by special presentment with simple battery, theft by taking, and three counts of felony obstruction of an officer, all arising out of a domestic dispute. A jury convicted Shaw of battery, theft, and one count of felony obstruction. Shaw's motion for new trial was denied. He appeals, challenging the sufficiency of the evidence, his warrantless arrest, and the denial of his motion to dismiss the indictment. We affirm.

Viewed in the light most favorable to the verdict, the evidence shows that the victim called 911 from a gas station asking for assistance to retrieve her car keys from Shaw's home. Two Marietta police officers, Christopher O'Barr and Debbie Jane Dixon, responded. When the officers arrived at the gas station, the victim stated that Shaw had grabbed her by the throat, shoved her against the wall, taken her car keys, and pushed her out the door. The officers saw red marks on the victim's neck. The victim stated that she did not wish to prosecute Shaw but needed assistance recovering her possessions

and keys.

The officers transported the victim to Shaw's residence. Officer O'Barr testified that they found some of her belongings on the front porch, but not her keys. Officer O'Barr knocked on the front door for approximately five minutes until Shaw responded. When Shaw opened the door, he was highly agitated and smelled strongly of alcohol. Officer O'Barr asked Shaw for the victim's keys. Shaw looked at the victim and said: "get the f—k out of [my] house and take these white f—ers with you." He denied having the victim's keys.

Both officers testified that they tried without success to calm Shaw down. Officer O'Barr testified that he tried to question Shaw concerning the incident with the victim, but Shaw continued to shout profanities. According to the officer, Shaw then turned his back toward the officers, started walking back toward his house, and stepped inside his front door. Officer O'Barr testified that he "followed [Shaw] to the edge of the doorway. And [Shaw] started to shut the door. And I put my hand against the door. I wasn't going to let him shut the door. We needed to, you know, resolve this situation."

Officer O'Barr next testified that Shaw "told me to get my f—ing hillbilly ass out of his house. At which point, I replied he was under arrest." Shaw again tried to close the door, and Officer O'Barr pushed it open. Shaw then lunged toward the officer and "started swinging," hitting him in the shoulder and side. Officer O'Barr stated that his immediate concern — the reason he did not want Shaw to close the door — was that Shaw might have a weapon.

Officer Dixon testified that at the time Officer O'Barr attempted to arrest Shaw, Shaw had stepped outside onto the porch. Officer Dixon further testified that Shaw, who was shouting profanities, retreated toward his door; Officer O'Barr put his foot in the doorway and grabbed Shaw; and Shaw shoved O'Barr and tried to withdraw into the house.

Officer O'Barr testified that the fighting continued into the foyer. Finally, Officer Dixon used pepper spray to subdue Shaw. O'Barr was affected by the spray; he and Dixon stepped outside. Shaw ran for the door and locked it. The two officers called for backup, and four more officers arrived. The officers contacted Shaw through 911 and tried to coax him outside. After ten minutes, Shaw walked out the front door onto the porch, shouting obscenities. According to Officer O'Barr, Shaw initiated a fistfight when the officers tried to place him under arrest, and they finally wrestled him to the ground. Two of the other officers who were summoned to the scene, Bertolo and Gruber, testified that when Shaw came onto the porch, he tried to lock the screen door; the officers kicked it down and grabbed him.

A search conducted incident to Shaw's arrest revealed the victim's keys in his pocket. The keys were not introduced into evidence.

1. Prior to trial, Shaw moved to dismiss the indictment, alleging the warrantless entry into his home was unconstitutional. Finding no authority for dismissing the indictment, the trial court treated the motion as one to suppress evidence. After an evidentiary hearing, the trial court denied the motion.

On appeal, Shaw enumerates this ruling as error. However, he is unable to produce any authority for the proposition that the appropriate remedy for an illegal arrest is dismissal of the indictment. Shaw acknowledges in his appellate brief that Georgia courts "have not allowed dismissal of an indictment as a remedy for police misconduct." We decline Shaw's invitation to impose such a harsh sanction here. Accordingly, the trial court did not err in refusing to dismiss the indictment.

Shaw also enumerates as error the trial court's refusal to suppress the officers' testimony that the victim's keys were found in Shaw's home.[1] He claims that this testimony was tainted by the allegedly unlawful entry. "Only tangible physical evidence is subject to motions to suppress. Testimony is outside the scope of a motion to suppress and should be objected to on the trial."[2] While Shaw filed a motion in limine based on the alleged constitutional violation, the motion challenged only the admission of testimony concerning the presence of alcohol on his premises or his breath.[3] "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal."[4] Accordingly, this claim of error is waived.

2. Shaw next contends that the evidence is insufficient to support his conviction of felony obstruction of a law enforcement officer. We disagree.

On appeal, this Court determines evidence sufficiency. We do not weigh the evidence or determine witness credibility.[5] The evidence is sufficient as a matter of law if, when viewed in the light most favorable to the verdict, a rational trier of fact could find all the essential elements of the crimes charged beyond a reasonable doubt.[6] To commit the offense of felony obstruction of an officer, a person must knowingly and wilfully resist, obstruct, or oppose any law enforcement officer in the lawful discharge of his official duties, by either

---

[1] The victim's keys were not tendered in evidence at trial.

[2] (Citations and punctuation omitted.) *Smith v. State*, 221 Ga. App. 670, 671 (1) (472 SE2d 503) (1996).

[3] Cf. *State v. Roe*, 211 Ga. App. 129 (1) (438 SE2d 186) (1993).

[4] (Citations and punctuation omitted.) *Watkins v. State*, 206 Ga. App. 701, 705 (3) (426 SE2d 238) (1992).

[5] *Davis v. State*, 225 Ga. App. 627 (1) (484 SE2d 655) (1997).

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

offering to do violence to or doing violence to the officer.[7]

In the instant case, Shaw argues that the state failed to prove that the officer was in the lawful discharge of his official duties at the time of the obstruction.[8] Shaw's argument is twofold.

(a) First, Shaw asserts that Officer O'Barr lacked probable cause to believe that he had committed battery or theft when he arrested him without a warrant.[9] Thus, Shaw contends his arrest was unlawful, and he " 'had the right to resist with all force necessary for that purpose.' "[10]

> "Warrantless arrests are lawful 'if the officer has probable cause to believe that an act of family violence, as defined in Code Section 19-13-1, has been committed.' OCGA § 17-4-20 (a). The OCGA § 19-13-1 definition of family violence includes [battery]." The victim's on-the-scene accusations against defendant in the case sub judice, along with "visible bodily harm" to the victim's [throat], provided [police] with probable cause to believe that defendant had committed battery as proscribed by OCGA § 16-5-23.1 (a).[11]

Here, the victim informed the officers that Shaw had grabbed her by the throat, shoved her against the wall, and pushed her out the door. These statements, coupled with the officers' observation of red marks on the victim's neck, provided sufficient evidence for the jury to conclude beyond a reasonable doubt that Officer O'Barr had probable cause to arrest Shaw for battery.

(b) Shaw next argues that even if probable cause existed, Officer O'Barr's warrantless entry into his home to effectuate his arrest violated the Fourth Amendment. Shaw is correct that absent exigent circumstances or consent, an entry into a private dwelling to effect an arrest without a warrant is unconstitutional.[12] However, in *Carranza v. State*,[13] upon which Shaw relies, evidence that the police entered the suspect's dwelling to effectuate an arrest was uncontroverted.

In the instant case, the evidence concerning whether Officer O'Barr entered Shaw's abode in order to effectuate an arrest was in conflict. Shaw testified that O'Barr put his foot in the doorway when

---

[7] OCGA § 16-10-24 (b).

[8] See *Green v. State*, 240 Ga. App. 774, 775 (1) (525 SE2d 154) (1999).

[9] See *Williams v. State*, 228 Ga. App. 698, 700 (2) (492 SE2d 708) (1997).

[10] *Woodward v. State*, 219 Ga. App. 329, 331 (1) (465 SE2d 511) (1995), citing *Smith v. State*, 84 Ga. App. 79, 81 (65 SE2d 709) (1951).

[11] (Citation omitted.) *McCracken v. State*, 224 Ga. App. 356, 358 (2) (480 SE2d 361) (1997).

[12] *Payton v. New York*, 445 U. S. 573 (100 SC 1371, 63 LE2d 639) (1980); *Carranza v. State*, 266 Ga. 263, 268 (1) (467 SE2d 315) (1996).

[13] Id.

Shaw tried to close the door. O'Barr testified that he physically prevented Shaw from closing the door. But Officer Dixon testified that Shaw had stepped onto the porch when Officer O'Barr attempted to arrest him. Although Dixon's testimony on redirect examination was somewhat equivocal,

> conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[14]

The jury was properly charged that if it found that Officer O'Barr entered Shaw's house to question or arrest him, the entry would be illegal, and Shaw would be justified in using force to resist the arrest. The jury necessarily found that no illegal entry occurred, and we will not disturb that finding. Accordingly, we affirm Shaw's conviction of felony obstruction of an officer.

3. Finally, we conclude that the evidence is sufficient to support Shaw's convictions of simple battery and theft by taking.

(a) *Simple battery.* Shaw was convicted of intentionally causing the victim physical harm by grabbing and pushing her, a misdemeanor under OCGA § 16-5-23 (a) (2). The victim testified that Shaw was merely trying to prevent her from driving because he believed she had been drinking. Based on this testimony, Shaw argues that the state failed to prove he intended to harm her. "The intention with which an act is done is peculiarly for the jury."[15] A jury may infer that a person acted with criminal intent after considering the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[16]

The officers' testimony concerning statements the victim made at the gas station, the red marks around her throat, and Shaw's demeanor toward the victim when the officers brought her to his home, all permitted the jury to infer that Shaw had the requisite criminal intent. As such, the evidence was sufficient for the jury to find that Shaw intentionally harmed the victim and was, therefore, guilty beyond a reasonable doubt of simple battery.[17]

(b) *Theft by taking.* OCGA § 16-8-2 provides:

> A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof,

---

[14] (Citations and punctuation omitted.) *Hagood v. State*, 228 Ga. App. 693, 694 (2) (492 SE2d 606) (1997).

[15] (Citations and punctuation omitted.) *Eberhart v. State*, 241 Ga. App. 164, 165-166 (1) (526 SE2d 361) (1999).

[16] Id.; OCGA § 16-2-6.

[17] *Jackson v. Virginia*, supra.

unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.

Again, Shaw argues that the state failed to prove intent. He bases this argument on the victim's testimony that Shaw came into possession of her keys because he had washed her car. However, intent is a jury issue. The circumstances surrounding Shaw's confrontation with the officers, including his demeanor toward the victim and the fact that the keys were found in his pocket, all permitted the jury to infer the criminal intent to deprive the victim of her property. Consequently, the evidence is sufficient to support the jury's finding that Shaw is guilty, beyond a reasonable doubt, of theft by taking.[18]

4. Shaw finally enumerates as error the admission in evidence of a copy of an audiotape recording of two telephone calls to 911, one made by the victim and one by Shaw. Shaw argues that no proper foundation was laid for the admission of the copy according to the seven criteria set forth in *Steve M. Solomon, Jr., Inc. v. Edgar*:[19]

> It must be shown that the mechanical transcription device was capable of taking testimony; that the operator of the device was competent to operate the device; that changes, additions, or deletions have not been made; and that the testimony was elicited freely and voluntarily made, without any kind of duress. Further, the authenticity and correctness of the recordings must be established; the manner of preservation of the record must be shown; and the speakers must be identified.[20]

Since *Solomon, Inc.* was decided in 1955, "advances in recording technology have somewhat relaxed these foundation requirements."[21] Moreover, recognizing "the difficulty inherent in authenticating [an] . . . audiotape when an authenticating witness was unavailable,"[22] in 1996 the legislature enacted OCGA § 24-4-48 (c), which provides that

> audio recordings produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence

---

[18] Id.; see also *Romano v. State*, 233 Ga. App. 149, 152 (2) (503 SE2d 380) (1998).
[19] 92 Ga. App. 207, 211-212 (3) (88 SE2d 167) (1955).
[20] *Russell v. Superior K-9 Svc.*, 242 Ga. App. 896, 897 (1) (531 SE2d 770) (2000).
[21] Id.
[22] *Phagan v. State*, 268 Ga. 272, 280 (5) (486 SE2d 876) (1997).

when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered. . . .

The records custodian of the Cobb County 911 Communications Bureau presented detailed testimony as to the process used in producing both the original audiotapes and the copy admitted into evidence. She explained that calls are automatically recorded without the intervention of the 911 operator. The custodian further testified that the copy was a true and correct copy of the original recording. The state thus laid the proper foundation for the admission of the tapes under OCGA § 24-4-48 (c).

Shaw complains primarily that the state failed to authenticate the audiotape in that the custodian was unable to identify the voices on the tape. As to the recording of the telephone call made by Shaw, we note after the tape was played to the jury, defense counsel asked Shaw: "Q. The playing of [the] tape showed a quite different sound to your voice than what we are experiencing today. What do you think the reason for that was? A. I felt humiliated. . . ." Having admitted at trial that the voice on the audiotape belonged to him, Shaw cannot now complain that the state failed to authenticate his voice. "A party cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing."[23] Morever, even if the state failed to authenticate the victim's voice, any error in the admission of the recording of the call she made to 911 was harmless. Officer O'Barr had already testified to the same facts, making the tape merely cumulative of other evidence that was properly before the jury.[24]

Finally, contrary to Shaw's argument, the custodian's testimony that she deleted the dead space between the two calls on the copy she made of the original audiotape does not render the copy inadmissible. The custodian testified that she made no alterations or deletions within the calls themselves.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 7, 2001.

*Skelton & Skelton, H. Gray Skelton, Jr.,* for appellant.
*Patrick H. Head, District Attorney, Rose L. Wing, Maria B. Golick, Assistant District Attorneys,* for appellee.

---

[23] (Citations and punctuation omitted.) *Russell,* supra at 897.
[24] See *Livingston v. State,* 271 Ga. 714, 720 (5) (524 SE2d 222) (1999).