A99A2442. RUSSELL v. SUPERIOR K-9 SERVICE, INC. et al.
(531 SE2d 770)

POPE, Presiding Judge.

"Rocky," a 110-pound Rottweiler, attacked and bit Melanie S. Russell on the premises of Richard's Buckhead Collision. Russell was an employee of Richard's, and Rocky was a guard dog that the business hired from Superior K-9 Service, Inc. In 1994, following a series of break-ins, Eugene Cato, Richard's owner, decided that he should get a guard dog to help protect his business. To that end, he contacted Glenn C. Whitten, Superior's owner, and subsequently contracted for Rocky's services. Under the parties' contract, Richard's was responsible for feeding the dog, releasing him from his pen to patrol the grounds at night and securing him again in the morning. Cato and one other employee were primarily responsible for these duties, although on two occasions a third employee released Rocky from his pen. Russell had no regular responsibilities for Rocky, but Cato anticipated that he might have to ask her to help with the dog on occasion. So following instructions received from Whitten, Russell took steps to make the dog familiar with her.

On the evening of the attack, Russell asked Cato if she could let Rocky out of his pen, and he agreed. As she had been instructed, Russell blew a whistle, called Rocky's name and approached him with treats in hand. She then opened the gate and let the dog out. But

when Russell walked back toward the shop door, the dog attacked her.

Russell sued Superior and Whitten for damages arising out of the attack, and she appeals following a jury verdict in favor of the defendants.

1. Russell first claims that the defendants laid an insufficient foundation for the admission of an audio recording made by Whitten of a telephone conversation he had with Elaine Dunton, another Richard's employee, the evening of the attack. In ruling that the tape was admissible, the trial court stated: "Well, foundation is, [Whitten] testified he had a conversation with Ms. Dunton, and Ms. Dunton testified yesterday she did, in fact, have a conversation."

"Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to admissibility will be upheld on appeal." (Citation and punctuation omitted.) *Hilliard v. J. C. Bradford & Co.*, 229 Ga. App. 336, 338 (1) (a) (494 SE2d 38) (1997). For a sound recording to be admissible into evidence, a proper foundation must be laid:

> It must be shown that the mechanical transcription device was capable of taking testimony; that the operator of the device was competent to operate the device; that changes, additions, or deletions have not been made; and that the testimony was elicited freely and voluntarily made, without any kind of duress. Further, the authenticity and correctness of the recordings must be established; the manner of preservation of the record must be shown; and the speakers must be identified. *Central of Ga. R. Co. v. Collins*, 232 Ga. 790 (209 SE2d 1) (1974); *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 211-212 (88 SE2d 167) (1955).

*Hilliard v. J. C. Bradford & Co.*, 229 Ga. App. at 338 (1) (a). Our Supreme Court has recognized, however, that advances in recording technology have somewhat relaxed these foundation requirements. See *Saunders v. Padovani*, 258 Ga. 866, 867 (375 SE2d 853) (1989).

In this case, the existence of the audio tape was first established by Whitten's testimony, in response to questions from Russell's attorney. Ordinarily "a party cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing." *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839, 841-842 (7) (418 SE2d 119) (1992). See also *Winburn, Lewis & Barrow, P.C. v. Richardson*, 233 Ga. App. 534, 538 (3) (504 SE2d 480) (1998). But even though Russell "opened the door" to the admission of the tape, defendants were still required to authenticate it.

The record shows that both parties to the phone conversation

testified at trial. The transcript of the call was used to refresh Dunton's memory, and she testified that she recalled the conversation from reading the transcript. After the tape was played to the jury, Whitten was cross-examined by Russell's counsel. He testified, among other things, that he made the recording of the phone conversation in his home and that "the whole reason of making the tape is because the first time you hear a story . . . it's usually the truth. . . ." Thus, the evidence indicates that Dunton and Whitten had a phone conversation, that Whitten recorded it and that the tape played to the jury was the tape of that conversation. Under these circumstances, we find no error in the admission of the audiotape.

And even if there were some error, a reversal would not be required so long as the evidence of the same facts was properly before the jury. *Platt v. Nat. Gen. Ins. Co.*, 205 Ga. App. 705, 710 (1) (c) (423 SE2d 387) (1992). The transcript shows that before the tape was even played to the jury, Dunton testified to a number of the same matters heard on the tape.

2. Russell also claims that the trial court erred by charging the jury on the doctrine of assumption of risk. But "[w]hen there is any evidence, however slight, upon a particular issue, it is not error for the court to charge the law in relation to the issue." (Citation and punctuation omitted.) *Evans v. Dept. of Transp.*, 226 Ga. App. 74, 75 (2) (485 SE2d 243) (1997). "Assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." (Citation omitted.) *Jimenez v. Morgan Drive Away*, 238 Ga. App. 638, 639 (1) (519 SE2d 722) (1999).

Here, the evidence showed that Russell volunteered to let Rocky out of the pen the night of the attack and that she knew Rocky was a guard dog and not a pet. This evidence was sufficient to raise a jury question on assumption of risk, and the charge was proper. *Henderson v. Lowe's Home Centers*, 234 Ga. App. 573, 574 (507 SE2d 159) (1998).

3. Russell next contends that because the doctrine of assumption of risk assumes that someone acted without coercion in choosing to undertake a task, the trial court erred when it failed to charge the jury that an employee's freedom of choice can be restricted by the circumstances of employment. See *York v. Winn-Dixie Atlanta*, 217 Ga. App. 839 (459 SE2d 470) (1995); *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701 (289 SE2d 807) (1982). But it is not error to refuse to give a charge which is not supported by the evidence. *Monsalve v. State*, 271 Ga. 523, 526 (3) (519 SE2d 915) (1999).

Here, there is no evidence to support a finding that Russell was acting under coercion to remain employed. Russell had never been

required to release Rocky from his cage before, and, in fact, she asked to do so. Even if it were anticipated that letting Rocky out might become part of Russell's duties in the future, the evidence could not support a finding that Russell, who undertook a task outside her normal duties and at her own request, could reasonably believe her continued employment depended upon her opening the pen that night.

4. Russell further argues that the trial court erred by refusing to charge provisions of the Second Restatement of Torts relating to the duties of one who supplies chattel for use by a third party. Although the trial court did not give Russell's requested charges, the court gave charges that covered substantially the same principles. Because Russell cannot show she was harmed by the trial court's refusal to give her requested charges, we find no error. See *Clark v. Stafford*, 239 Ga. App. 69, 74 (3) (522 SE2d 6) (1999); *Lane v. State*, 239 Ga. App. 230, 232 (4) (520 SE2d 705) (1999).

*Judgment affirmed. Smith and Miller, JJ., concur.*

DECIDED MARCH 20, 2000 — ▇▇▇▇▇▇▇

*Kitchens, Kelley & Gaynes, Stephen V. Kern,* for appellant.
*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Loewenthal & Jackson, Glenn A. Loewenthal,* for appellees.