A02A0817, A02A1214. WILLETT v. RUSSELL M. STOOKEY, P.C. et al. (two cases).
(568 SE2d 520)

POPE, Presiding Judge.

Harold Willett, Jr. sued Russell M. Stookey, P.C. and Russell M. Stookey for legal malpractice, fraud, breach of fiduciary duty, and intentional misconduct in connection with Stookey's representation of Willett in the sale of the stock of Willett Construction Company, Inc. to Ralph Neely. Ronald M. Cohen and his law firm, Hunter, MacLean, Exley & Dunn, P.C., were also named as defendants in the suit. The trial court granted Stookey's motion for summary judgment on all counts other than legal malpractice. The legal malpractice claim was tried before a jury and resulted in a verdict for Stookey and Cohen. In Case No. A02A1214, Willett claims the trial court erred in making a number of evidentiary rulings during the trial of

his legal malpractice claim. In Case No. A02A0817, Willett claims the trial court erred in granting Stookey's motion for summary judgment on Willett's claims for punitive damages in connection with his legal malpractice claim, and on his claims for fraud, breach of fiduciary duty, and intentional misconduct.

Attorneys Stookey and Cohen represented Willett in the sale of the stock of Willett Construction Company to Neely, a Willett Construction employee. At the time of the sale, Willett had been convicted of child molestation and was in jail. Willett and Neely executed a purchase agreement for the stock of Willett Construction, and Neely gave Willett a promissory note as payment for the stock. Willett Construction guaranteed payment of the note. In a transaction which violated the terms of the purchase agreement, Neely subsequently obtained an $80,150 personal loan secured by real estate owned by Willett Construction. Because of Neely's default under the purchase agreement, Willett took back his stock; Willett was then forced to satisfy Neely's personal loan to prevent Neely's creditor from foreclosing on the Willett Construction property.

Willett claimed that Stookey and Cohen were guilty of legal malpractice because the stock sale was not properly structured. More specifically, he complained that lawyers of ordinary skill and capacity who undertook to represent clients in similar transactions would have caused the real and personal assets of Willett Construction to be pledged to the payment of its guaranty and would have secured the pledge by executing and filing deeds to secure debt and Uniform Commercial Code financing statements in the appropriate public records. Willett maintains that the failure to establish and record a security interest in the assets of Willett Construction harmed him because it allowed Neely to pledge real estate owned by Willett Construction as security for Neely's personal loan.

## Case No. A02A1214

1. Willett claims that the trial court erred by admitting the bill of indictment against him for child molestation. Willett admits that his conviction for the crime was admissible for purposes of impeachment, but urges that the details of the crime could not be introduced.

A witness may be impeached by introducing proof of conviction of a crime involving moral turpitude. *Vincent v. State*, 264 Ga. 234 (442 SE2d 748) (1994). In this case, the defense successfully impeached Willett by tendering certified copies of his previous convictions for two counts of aggravated sodomy, two counts of child molestation, and two counts of aggravated sexual battery. But the defense went further, introducing the corresponding indictment that contained the highly prejudicial specific details of the crimes.

Inasmuch as the witness had already been impeached, and [he] did not attempt to rehabilitate [his] character by explaining the circumstances of [his] convictions (see *Belvin v. Houston Fertilizer &c. Co.*, 169 Ga. App. 100, 101 (2) (311 SE2d 526) (1983)), the facts surrounding the . . . conviction[s] should have been excluded. [Cits.] It follows that the trial court erred in permitting the [party] to "bolster" its impeachment evidence.

*Vincent*, 264 Ga. at 235.

The error was harmful. The details found in the indictment are extremely prejudicial; the defense had already accomplished its purpose of impeaching Willett; and the details of the crimes committed by Willett are not "merely cumulative" of the fact that he had been convicted of the crimes. The details found in the indictment are graphic, specific, and wholly irrelevant to a legal malpractice claim. The trial court's conclusion that the indictment was "part and parcel" of the conviction was an abuse of discretion.

Nor does it matter that Willett admitted in his case-in-chief that he had been convicted of child molestation and the other offenses. He did not testify about the details of the incidents. We do not address the question of whether the conviction itself should have been admitted given Willett's earlier repeated admission to the convictions on direct, and again on cross-examination.

2. Willett next claims that the trial court erred by admitting, over his objection, a copy of the complaint and answer from a civil lawsuit arising out of the same incident for which he was convicted. In particular, Willett notes that these documents revealed the highly prejudicial fact that he was convicted of sexually abusing a young boy.

Prior to trial, the court had ruled in limine that Stookey could present "evidence regarding the existence of a civil lawsuit growing out of Plaintiff's criminal conviction to the extent that it is relevant to the Defendants' claim that Plaintiff was attempting to hide assets from a potential judgment creditor." At trial, Stookey's lawyer asked Willett, "And you were sued by the father of one of the children you had molested . . . , isn't that true?" He then sought to admit the complaint and answer to that suit both to show Willett's financial motivation and to show that Willett had lied in his answer by denying that he was a personal friend and business associate of the father and a trusted person for the child. The court allowed introduction of a redacted copy of the complaint and answer for the limited purpose described in the earlier order in limine but refused to allow questioning about the details of the underlying incidents.

When the questioning resumed, Stookey's lawyer, in an obvious

violation of the judge's order, asked, "You knew that that boy's daddy wanted some money out of you. True?" Willett objected but did not move for a mistrial. The court instructed Stookey's lawyer to refer to the child only as "the victim," but noted that because the indictment would probably be introduced, the jury was going to learn the gender of the child eventually. Given our ruling in Division 1, however, any reference to the gender of the child should be excluded from the retrial.

Even when character evidence is admissible, the trial court must weigh the relevance against the harm. As we have stated,

> The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct. However, such testimony may be admitted if relevant to an issue in the case and if the evidence does not place too great a danger of undue consumption of time, confusion of issues, undue prejudice or unfair surprise.

(Citations and punctuation omitted.) *Troncalli v. Jones*, 237 Ga. App. 10, 16 (4) (514 SE2d 478) (1999). Reviewing the trial court's decision to allow the complaint and answer without fully redacting all details of the underlying incident, we again find that the court abused its discretion. Although redacted, the complaint still reveals the age of the child and other facts unrelated to the defense that Willett had a financial motivation. For the purposes of retrial, we again caution that only the bare facts necessary to show Willett's possible financial motivation should be admitted given the extremely prejudicial nature of the lawsuit against Willett.

3. Willett claims the trial court erred in refusing to admit into evidence certain audiotape recordings of telephone conversations between Stookey and Willett. Citing *Russell v. Superior K-9 Svc.*, 242 Ga. App. 896 (531 SE2d 770) (2000), the trial court refused to allow introduction of the tapes or any use of the corresponding transcripts, saying,

> [T]he fact that Mr. Stookey may have said that he taped on occasions telephone conversations between himself and his former client does not per se make the tapes of those conversations admissible. There's certain threshold showings that you have to make before that witness can — that evidence can be received. What you've outlined to me is not sufficient to meet the requirements of the case law and the statutes.

"[T]he admission of evidence is generally committed to the sound discretion of the trial court[ ] whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Punctuation and footnote omitted.) *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001).

Under Georgia law, admission of audiotape is controlled by "the 7-part test referred to in *Steve M. Solomon, Inc. v. Edgar*, 92 Ga. App. 207, 211 (88 SE2d 167) (1955), adopted with approval by [the Supreme Court] in *Estes v. State*, 232 Ga. 703, 710 (208 SE2d 806) (1974), and relaxed a bit in *Harris v. State*, 237 Ga. 718, 724 (230 SE2d 1) (1976)." *Saunders v. Padovani*, 258 Ga. 866, 867 (375 SE2d 853) (1989). See also *Russell*, 242 Ga. App. at 897 (1). As stated by this Court in 1955,

> A proper foundation for their use must be laid as follows: (1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate [the device]. (3) The authenticity and correctness of the recording must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of preservation of the record must be shown. (6) Speakers must be identified. (7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress.

*Edgar*, 92 Ga. App. at 211-212 (3). See also *Russell*, 242 Ga. App. at 897 (1).

Willett admits that he did not provide all the above listed elements, but he asserts that he introduced sufficient information to authenticate the evidence, and he points to our comment in *Russell* that our Supreme Court has somewhat relaxed the foundation requirements for audio recordings because of advances in recording technology.

It is true that Willett failed to introduce evidence to support the findings required in nos. 1, 2, and 5 in the above list. But, he did provide the testimony of both parties to the conversation to show the other elements. Willett testified that for each tape in question, he had listened to the tape in its entirety, that he recognized the voices to be those of Stookey and himself, that he recalled having the conversation, and that the tape was a fair, accurate, and complete recording of the conversation. With regard to the tapes themselves, this established required finding nos. 3, 4, and 6.

Willett also based admissibility on Stookey's answers to requests for admission made during discovery.

In his requests for admission Willett asked Stookey to admit, for each tape, the following: "That the tape entitled _____ contains a fair and accurate recording of a conversation between Russell M. Stookey and _____ recorded by Russell M. Stookey on or about _____." For each tape, Stookey's response to the request was the same:

> Mr. Stookey objects to this request on the grounds that it is unduly burdensome for him to listen to each tape and review the transcribed version at the same time given the amount of requests involved in the plaintiff's request for admissions to the defendant. Furthermore, Mr. Stookey objects to this request on the grounds that he cannot authenticate the transcriptions as he was not the court reporter who transcribed the audio-taped conversations. *Subject to said objection, Mr. Stookey agrees that, based on his listening of the tape in question and his review of the transcription of same that the transcription appears to be a substantially accurate depiction of the conversation,* although the court reporter herself noted that certain portions were inaudible. Mr. Stookey cannot admit that the transcription of said conversation is accurate to the letter.

(Emphasis supplied.)

For each transcript of those same tapes, Willett asked Stookey to admit the following:

> That the transcript entitled _____ contains a true and accurate transcription of the audiotape of the same title. If you do not admit that the transcript is a true and accurate transcription of the said audiotape, then identify by page and line, each and every error or omission in the transcript, and state how each such error or omission in the transcript should read.

In reply, Stookey stated, "Although Mr. Stookey cannot admit that, as transcribed, this transcript is accurate to the letter, he cannot identify any error or omission in the transcript per se."

Although written with objections and caveats, these admissions certainly do not dispute what Willett testified to, that the tapes are accurate recordings of their conversations. Furthermore, Stookey has admitted that each specific tape and transcript *"appear[ ] to be a substantially accurate depiction of the conversation"* and that "he cannot identify any error or omission in the transcript per se."

Finally, during the trial, Stookey admitted that he had made tape recordings of some of his conversations with Willett, that Willett's attorney had the tapes and transcripts of them, that he had

read the transcripts during the early phase of the litigation (presumably in connection with responding to the requests for admission), and, with regard to whether he had recorded one of the specific conversations, he testified, "if I admitted it [in response to the requests to admit] and you've got the tape, then obviously I did." Stookey's testimony did not alter his responses to the requests to admit and obviously shows that the tapes were not made under duress.

For the purposes of retrial, we believe that Stookey's admissions, his testimony in court, and Willett's testimony would be sufficient to lay the foundation for the admission of the tapes and transcripts. See *Russell*, 242 Ga. App. 896. Although Willett never showed the "manner of preservation" of the tapes, that requirement should have little importance where both parties to a conversation have testified that the tapes in the attorney's possession are accurate and complete recordings. The fact that the tapes exist at all is evidence that the tape recorder was functional and that Stookey knew how to operate it. However, a review of the transcript shows that Willett failed to clearly present the significance of Stookey's discovery admissions to the court or to show how the tapes came to be in his possession. Therefore, under the current state of the law, as adopted by the Supreme Court in *Estes*, 232 Ga. 703, and modified in *Harris*, 237 Ga. 718, we cannot say that the court abused its discretion by refusing to admit the tapes. Because Willett will have another opportunity to lay the foundation, our holding on this issue is not controlling for the purposes of retrial.

4. Willett claims that the trial court erred in granting Stookey's motion to exclude evidence related to a separate civil action then pending against Stookey in the State Court of Chatham County. Willett wished to present the testimony of three witnesses indicating that Stookey fabricated a letter to the Cotton States insurance company in order to cover up his legal malpractice. Willett argues that the testimony was relevant to Willett's contention that Stookey fabricated a May 20, 1995 letter from Stookey to Willett in order to cover up his malpractice in this case. He notes that "the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value." (Citations and punctuation omitted.) *Norman v. State*, 197 Ga. App. 333, 336 (4) (398 SE2d 395) (1990).

The evidence with regard to the Cotton States letter is arguably probative of Stookey's fraudulent intent or motive with regard to the charge that he fabricated the May 20, 1995 letter. See *Kutner v. Davenport*, 257 Ga. 456, 457 (360 SE2d 586) (1987). However, the admissibility of evidence rests in the sound discretion of the trial court. *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 150 (2) (416 SE2d 127) (1992). And in exercising its discretion in determining the admissibility of evidence, the trial court may exclude otherwise rele-

vant evidence when its probative value is substantially outweighed by the risk of confusing the issues or misleading the jury. *Goss v. Total Chipping*, 220 Ga. App. 643, 644 (2) (a) (469 SE2d 855) (1996).

The proffered testimony presented a risk of confusing the issues. First, the evidence that Stookey fabricated the Cotton States letter is circumstantial. Second, two of the witnesses are arguably biased; witness Richardson is the plaintiff in the unrelated litigation, while witness Carpenter left Stookey's employment because she was unhappy. Third, in order to understand the testimony of witness Shiver, a forensic document examiner, the jury would have to be educated about law office procedure in handling insurance matters such as the Cotton States letter, as well as numerous technical concepts related to document production and transmission. In short, it would have been necessary to have a mini-trial on this one point. And, the proffered evidence does not directly address the core issue of Stookey's alleged malpractice in handling the sale of Willett Construction. We find that it was within the discretion of the trial court to conclude that the probative value of the proffered evidence with regard to the forgery of the Cotton States insurance letter was outweighed by the possibility of unfair prejudice to Stookey.

## Case No. A02A0817

Willett appeals the trial court's grant of summary judgment to Stookey on all issues other than his legal malpractice claim. Stookey may prevail "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of the record is de novo. *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

5. The trial court granted summary judgment to Stookey on Willett's claim for punitive damages for legal malpractice. Our review of the cited evidence regarding the alleged malpractice and any possible motivation by Stookey and Cohen to structure the transaction as they did does not reveal any evidence of wilful misconduct, malice, fraud, wantonness, oppression, or conscious indifference to the consequences, and therefore, summary judgment on this issue was proper.

6. In his second and fourth enumerations of error, Willett claims that the trial court erred in granting summary judgment to Stookey on his two counts of fraud, breach of fiduciary duty, and intentional misconduct. In particular, in Count 2 of his complaint, Willett charges that in October 1996, Stookey (a) conspired with Beverly Lawhorn, a secretary at Willett Construction, to create a false defense to the charge of legal malpractice; (b) caused Lawhorn to give

a false affidavit for the purpose of discouraging Willett from pursuing the legal malpractice claim; and (c) breached his fiduciary duty by not disclosing the alleged legal malpractice. In Count 4 of his complaint, Willett alleges that after the time Stookey became aware of a potential malpractice case against him, he fabricated a letter to make it appear as if he had advised Willett to place the sales documents on record and took other steps to create a defense to Willett's claims.

We find that the trial court did not err in granting summary judgment to Stookey on these counts. To the extent that Willett alleges that Stookey had procured false testimony or fabricated documents in anticipation of trial, this amounts to a claim of conspiracy to commit perjury, or of perjury, for which there is no civil remedy. See *Commercial Plastics &c. Corp. v. Molen*, 182 Ga. App. 202, 205 (4) (355 SE2d 86) (1987); *Sun v. Bush*, 179 Ga. App. 140, 141-142 (3) (345 SE2d 873) (1986). Compare *Butler v. Turner*, 274 Ga. 566, 569 (2) (555 SE2d 427) (2001).

Relying on *Holmes v. Drucker*, 201 Ga. App. 687 (411 SE2d 728) (1991), Willett argues that he is not pursuing a civil cause of action for perjury, but an action for breach of the continuing fiduciary duty that an attorney owes a former client. However, unlike in *Holmes*, the acts complained of here were allegedly taken in direct anticipation of a lawsuit. In *Holmes*, the attorney acted during representation of his client, to conceal the fact that he failed to file his client's action in a timely manner, and we found the concealment to be an actionable breach of fiduciary duty. Id. at 688-689 (1). The act of concealment was injurious in and of itself, and not taken only in the context of an impending lawsuit.

7. Willett claims that Stookey breached his fiduciary duty to Willett by recording several telephone conversations between Willett and Stookey, after the representation had terminated, without Willett's knowledge or consent; giving the tape recordings to the Chatham County Police Department; and by acting as secretary Lawhorn's attorney in connection with a police investigation into claims that she was stealing from Willett Construction.

"Of course, a lawyer may not disclose confidences or secrets of the former client, nor use them adversely to that client." *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258 Ga. 720, 721, n. 1 (373 SE2d 749) (1988). But even if Willett could show a breach of fiduciary duty with regard to Stookey's dealings with Lawhorn, there is no evidence that Willett suffered any damages. He argues that he is nevertheless entitled to nominal damages, but some injury is necessary to show even nominal damages for a breach of fiduciary duty.

> To successfully bring a tort claim for breach of [fiduciary] duty, however, the claimant must show injury. As described

by our Supreme Court, the traditional formula for a claim in tort has three elements: "duty, breach (failure to conform to the required standard) and damage proximately caused by the breach." Damages compensate for injury and may be inferred from invasion of a property right. Where no actual damage flows from the injury, nominal damages may be awarded. Yet, some injury — even if small or nominal — is necessary.

(Footnotes omitted.) *Conner v. Hart*, 252 Ga. App. 92, 94 (1) (a) (555 SE2d 783) (2001). We cannot find any invasion of Willett's property rights by reason of Stookey's aid to Lawhorn in the police investigation.

Judgment affirmed in Case No. A02A0817. Judgment reversed in Case No. A02A1214. *Ruffin and Barnes, JJ., concur.*

DECIDED JUNE 21, 2002 —
RECONSIDERATION DENIED JULY 9, 2002 ▮▮▮▮▮▮▮▮▮▮

*Donald E. Dyches, Jr.*, for appellant.
*Love, Willingham, Peters, Gilleland & Monyak, Michael J. Hannan III, Oliver, Maner & Gray, Inman G. Hodges, Ellis, Painter, Ratterree & Bart, Ryburn C. Ratterree, Tracy A. O'Connell*, for appellees.