A02A1576. WHITEHEAD v. THE STATE.
(574 SE2d 351)

RUFFIN, Presiding Judge.

After a jury trial, Donald Wayne Whitehead was convicted of trafficking in marijuana and possession of marijuana with intent to distribute. On appeal, Whitehead contests the trial court's denial of his motion to suppress evidence, refusal to grant a mistrial, questioning of a witness, and preliminary instructions to the jury. Whitehead also claims there was insufficient evidence to support his trafficking conviction and that he was denied effective assistance of counsel at trial. For the reasons that follow, we affirm.

The record shows that members of the East Metro Drug Enforcement Team, in conjunction with the Drug Enforcement Administration ("DEA"), undertook a covert operation to purchase a large quantity of marijuana through a confidential informant. Before initiating the purchase, agents thoroughly searched both the informant and his vehicle. Inside the car, task force agents installed several electronic devices, including a global positioning system, a digital voice recorder, and an audio transmitting device. Agents monitored the informant's whereabouts by airplane and unmarked vehicles.

The informant drove to the residence of his friend, Bobby Hayes, who had earlier approached the informant about buying drugs. Hayes joined the informant in the car and directed him to Whitehead's house. When the informant and Hayes went into Whitehead's house, approximately 15 agents maintained surveillance. Inside, the informant and Hayes purchased 100 pounds of marijuana from Whitehead and arranged to buy 200 additional pounds. When the informant and Hayes left, half of the drug agents followed them, and the remaining officers continued watching Whitehead's house. A DEA officer contacted the Georgia State Patrol and asked officers to intercept the informant's vehicle. They did so and found a red cooler in the car that contained 24 packaged blocks or "compressed bricks" of marijuana. The officers also found four additional blocks of marijuana in a green ammunition can inside the car. The combined gross weight of the marijuana was 100.64 pounds.

Meanwhile, Whitehead left his house in his pickup truck. DEA agents followed Whitehead, and, after confirming that officers had seized the marijuana from the informant and Hayes, they stopped Whitehead. After Whitehead was stopped, he was placed under arrest and brought to DEA Agent Frank Smith at a location near Whitehead's residence. Smith informed Whitehead of his *Miranda* rights. Whitehead then told Smith that another 25 pounds of marijuana were located in Whitehead's house, and Smith relayed this information to the people applying for a search warrant for Whitehead's residence. Smith brought Whitehead back to the house after he obtained the search warrant. Investigators executing the warrant found 25 pounds of marijuana located inside a blue cooler in the master bedroom. Investigators also found twenty guns including eight pistols in the house and $19,000 in cash on top of a china cabinet.

Sergeant Chris Cain conducted a second interview with Whitehead at Whitehead's residence, which was recorded. Whitehead told Cain that Hayes had contacted him about two weeks earlier to buy 200 pounds of marijuana. Whitehead said he was able to obtain only 125 pounds of marijuana. He agreed to sell 100 pounds of it to Hayes for $800 per pound.

At trial, the informant testified that he and Hayes purchased 100 pounds of marijuana from Whitehead. The State presented forensic testimony confirming that the confiscated contraband was, in fact, marijuana and the weight of the marijuana. The jury heard the audiotape of the custodial statements Whitehead made at his house. The jury also listened to the tape recording made in the informant's car.

1. Whitehead contends that the trial court erred in denying his motion to suppress the evidence obtained during the traffic stop of his vehicle and the search of his residence. In reviewing a ruling by the trial court on a motion to suppress, the factual findings of that court will not be disturbed unless they are clearly erroneous and not supported by any evidence.[1] Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.[2]

(a) *Traffic stop.* Whitehead argues that because he was unlawfully stopped, the evidence obtained as a result of the stop should have been suppressed. He claims that the arresting officer lacked any reasonable, articulable suspicion that he was committing or was about to commit any criminal offense. On the contrary, before stopping Whitehead, investigators had already intercepted the informant and Hayes and confiscated the red cooler containing what appeared to be compressed bricks of marijuana. The informant and Hayes had already implicated Whitehead as their source. Thus, the record contains evidence to support the trial court's finding that officers had probable cause to stop Whitehead's vehicle.[3]

(b) *Search of the residence.* Whitehead contends that the search warrant was based on illegally obtained information and that the evidence gained from the execution of the search warrant should be suppressed. Whitehead complains that the affidavit supporting the search warrant was based on coerced custodial statements he gave during the seven hours that he was detained. Specifically, Whitehead complains that, after being arrested, officers pressured him to give a statement, and that he was confused and afraid that his wife would be arrested if he did not tell the officers what they wanted to know.

Evidence shows that the affidavit for the search warrant was based on information that the informant and Hayes had purchased marijuana at Whitehead's residence and Whitehead's initial statement to Agent Smith that he had another 25 pounds of marijuana at his house. The affidavit provided the judge issuing the search war-

---

[1] See *Lambropoulous v. State*, 234 Ga. App. 625 (507 SE2d 225) (1998).

[2] *Hudson v. State*, 253 Ga. App. 210 (558 SE2d 420) (2002); *Jackson v. State*, 230 Ga. App. 292, 296 (6) (496 SE2d 315) (1998).

[3] See *Dupree v. State*, 232 Ga. App. 573-574 (1) (502 SE2d 511) (1998).

rant with a substantial basis for concluding that probable cause existed to search Whitehead's residence for contraband or evidence of a crime.[4] As discussed below, evidence also showed that Whitehead's statements were freely and voluntarily given. The affiant's reliance upon the information gained from Whitehead's statements does not render the search warrant invalid.

(c) *Custodial statements*. Whitehead argues that his statements to police should also be suppressed. As to his two custodial statements, "[t]he question of whether a post-*Miranda* custodial statement is admissible depends on whether, under the totality of the circumstances, there was a knowing and voluntary waiver of rights."[5] Here, the record supports the trial court's finding that such statements were freely and voluntarily given.

Agent Smith testified that, soon after Whitehead was stopped, handcuffed, and advised of his rights, Whitehead told Smith that there were another 25 pounds of marijuana at Whitehead's house. Later, while officers were executing the search warrant, Whitehead gave a tape-recorded statement in which he admitted participating in the drug transaction. Sergeant Cain, who conducted the taped interview, testified he had personally advised Whitehead of his rights and Whitehead signed a waiver form. Both Cain and Smith testified that no threats or promises were made to Whitehead. The trial court was able to hear the testimony of these officers as well as the tape of the second statement. Whitehead has not shown by reference to the record any coercive acts by law enforcement personnel bringing into question the voluntary nature of his confession. We conclude that the trial court did not err in denying Whitehead's motion to suppress his custodial statements.

(d) *Audiotape*. Whitehead claims the trial court erred by allowing the jury to hear the audiotape of Whitehead's second statement to police. The tape was incomplete because the recorder's batteries failed during the recording, causing portions of the statement to be inaudible. Whitehead argued to the trial court that the presentation of part of the conversation destroyed the integrity of the statement as a whole, and that it in effect changed the statement. "When a recording is inaudible, its admissibility is subject to question; but when material portions are inaudible, then the recording should be rejected when it is the *only* evidence offered as to the statement."[6]

---

[4] See *DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997) (in determining if probable cause exists to issue a search warrant, the judge's task is to make a common-sense decision whether, based on the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place).

[5] (Punctuation omitted.) *Wells v. State*, 237 Ga. App. 109, 112 (3) (514 SE2d 245) (1999).

[6] *Pierce v. State*, 255 Ga. App. 194, 195 (1) (564 SE2d 790) (2002).

Here, Whitehead's statement was corroborated by the informant's testimony about the purchase of marijuana from Whitehead, as well as the physical evidence showing that a total of 125 pounds of marijuana was recovered from the informant's vehicle and Whitehead's residence. Whitehead makes no showing that the incomplete recording is misleading, or that the State intentionally failed to record a portion of Whitehead's statement. Furthermore, the jury was informed that the audiotape did not cover the entire statement, and the State presented it without alteration. The foundational requirements for the admission of the audiotape were met.[7] The admission of evidence is generally within the sound discretion of the trial court, and we find the trial court's admission of the audiotape was not an abuse of that discretion.[8]

2. Whitehead complains that the trial court erred in denying his motion for mistrial based on the State's inflammatory display to the jury pool of numerous firearms owned by his wife, himself, and his family. The transcript belies these claims. There is no evidence that a cache of weapons was openly brandished in the courtroom during voir dire or prior to trial. The exhibit at issue consisted of guns seized during the execution of the warrant that were packaged in boxes. Noting that a single firearm in a glass case was visible, and that "jurors have been parading by and seeing it," before the trial had begun, defense counsel moved for a mistrial. Apparently, none of the other guns were visible, and the trial court directed deputies to move the entire exhibit behind a solid railing where it could not been seen by the jurors. The trial court denied Whitehead's motion, but made it clear that the basis for the denial was the expectation that the firearm would be introduced into evidence, and informed the prosecutor that "if it doesn't come in and you've got stuff like this floating around out there, then we may have a problem."

"The abuse of discretion standard applies to the review of the denial by the trial court of a motion for mistrial."[9] We find no abuse here. There was only one weapon visible to jurors before trial, and the offending weapon was moved at the direction of the trial court before the official presentation of evidence. Subsequent testimony showed that officers seized numerous guns from Whitehead's residence, and photographs of several of these firearms were shown to the jury. Obviously, physical evidence should not be viewed by the jury before the trial begins, but under the circumstances here we find no abuse of discretion on the part of the trial court in denying the motion for a mistrial.

---

[7] See *Russell v. Superior K-9 Svc.*, 242 Ga. App. 896, 897 (1) (531 SE2d 770) (2000).

[8] See *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001).

[9] *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).

Furthermore, Whitehead did not renew his motion for mistrial after the guns were moved behind the railing, indicating that he acquiesced in the curative action taken by the trial court.[10]

3. Whitehead claims that the trial court improperly instructed the jury during its preliminary instructions. During these instructions, the trial court stated, "I'm the one that's going to tell you what the law is that applies to this case. Your job is to find the facts. Once you find the facts, you put those facts with the law that the Court gives you, and by putting those two together, you come up with a verdict." Even though he posed no objection to this charge, Whitehead now claims that the instruction misstates the jury's role by violating Art. I, Sec. I, Par. XI (a) of the Georgia Constitution, which provides in pertinent part: "and the jury shall be the judges of the law and the facts."

Although Whitehead failed to object to the preliminary instruction, he contends that he can still challenge the jury instruction on appeal by reason of OCGA § 5-5-24, which generally relieves criminal defendants from excepting to jury charges.[11] However, "OCGA § 5-5-24 . . . concerns the charge to the jury at the end of the case. This statute does not relieve the criminal defendant of the obligation to make timely objection throughout the trial. This obligation is essential to the court's trying the case with as few errors as possible."[12] The charge here was not part of the court's final instructions, and Whitehead therefore cannot acquiesce in the trial court's statement and only complain of it for the first time on appeal.[13]

Furthermore, even if the preliminary instruction is subject to review, there was no error in the instruction as given. As our Supreme Court has stated in *Conklin v. State*:[14]

It is true that our Constitution states: "In criminal cases . . . the jury shall be the judges of the law and the facts." 1983 Constitution, Art. I, Sec. I, Par. [XI]. However, it has long been settled that this language, identical to that in earlier constitutions, means that jurors are made absolutely and exclusively judges of the facts in the case, and, they are, in this sense only, judges of the law. It is the province of the

---

[10] See, e.g., *Johns v. State*, 253 Ga. App. 207, 208 (2) (558 SE2d 426) (2002) (the question of whether the trial court erred in denying defendant's motion for mistrial is not preserved for appellate review if defendant fails to renew motion for mistrial following trial court's curative instructions).

[11] *Foshee v. State*, 256 Ga. 555, 557 (2) (350 SE2d 416) (1986).

[12] Id.

[13] See *Cobb v. State*, 236 Ga. App. 265, 269 (3) (b) (511 SE2d 522) (1999) (defendant cannot acquiesce to ruling and then complain on appeal).

[14] 254 Ga. 558 (331 SE2d 532) (1985).

court to construe the law and give it in charge, and of the jury to take the law as given, apply it to the facts as found by them, and bring in a general verdict.[15]

The trial court's preliminary instruction properly informed the jury of this principle.

4. Whitehead claims the trial court interfered in the presentation of evidence by examining a witness. When the State asked the Georgia Bureau of Investigation forensic chemist the total weight of the marijuana that she tested, the chemist responded by asking, "Is it okay if I refer to my notes?" The prosecutor said, "[s]ure," and the trial court added, "[a]nd can you tell us which exhibits you're talking about too, if you don't mind." The witness then testified to the weight of the marijuana without objection.

Whitehead's failure to object to the trial court's statement to the witness leaves nothing for review.[16] Even disregarding Whitehead's failure to object, the trial court has broad authority to question a witness in search of the truth.[17] Here, the court's request simply clarified the basis for the witness' testimony by identifying the exhibits she was discussing. In so doing, the trial court did not violate OCGA § 17-8-57, which provides that it is error for a trial court in a criminal case "to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[18]

5. Whitehead claims that his conviction for trafficking cannot stand because there was no credible, direct evidence that he was ever in possession of more than 25 pounds of marijuana, the amount found in his residence. He argues that the informant was "a paid professional liar" and a convicted felon.

The informant testified at trial and was subject to a thorough and sifting cross-examination. His criminal history and self-serving motivation for helping the government were revealed to the jury, the ultimate judge of witness credibility.[19] Moreover, other evidence corroborated the informant's testimony. Almost immediately after the drug sale, a large quantity of marijuana was recovered from the informant's vehicle. An expert confirmed that the substance seized was marijuana weighing an amount well in excess of 50 pounds, the threshold for trafficking established by OCGA § 16-13-31 (c). Further, in his taped statement, Whitehead admitted buying 125 pounds of marijuana and selling 100 pounds of that marijuana to Hayes.

---

[15] (Citations and punctuation omitted.) Id. at 570 (10) (b).

[16] See *Gann v. State*, 245 Ga. App. 448, 449 (2) (538 SE2d 97) (2000).

[17] See *Mullins v. State*, 269 Ga. 157, 158-159 (3) (496 SE2d 252) (1998).

[18] See also *Hufstetler v. State*, 274 Ga. 343, 346 (3) (553 SE2d 801) (2001).

[19] *Bush v. State*, 267 Ga. 877, 878 (485 SE2d 466) (1997).

On appeal from a criminal conviction, Whitehead no longer enjoys the presumption of innocence, and the evidence must be viewed in the light most favorable to the jury's verdict.[20] So viewed, a rational trier of fact certainly could have found beyond a reasonable doubt that Whitehead committed the offense of trafficking in marijuana.[21]

6. Whitehead contends that his trial counsel rendered ineffective assistance. We disagree. To establish a claim of ineffectiveness, a defendant

> must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Prejudice exists where there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. We will affirm a trial court's finding that counsel was effective unless it is clearly erroneous.[22]

(a) Whitehead claims that his counsel lacked a comprehensive defense plan. We disagree. Whitehead's trial counsel employed a defense strategy designed to cast doubt on the State's case through cross-examination and by implicating a third party who purportedly left camping equipment at Whitehead's house for Hayes to pick up later.

(b) Although Whitehead now complains that it was a "bad tactic" to put him and his wife on the stand, and to present a character witness defense, such decisions are matters of trial strategy and tactics, and "whether wise or unwise, do not [constitute] ineffective assistance of counsel."[23]

(c) Notwithstanding Whitehead's claim to the contrary, defense counsel's cross-examination of Agent Blackard was thorough and sifting and did not concede his guilt.

(d) We also find no merit in Whitehead's complaint that trial counsel was ineffective in failing to request a charge in the exact language of Art. I, Sec. I, Par. XI of the Georgia Constitution of 1983 providing that, in criminal cases, "the jury shall be the judges of the law and the facts." As discussed above, the trial court properly instructed the jury on its role.

We conclude that Whitehead failed to satisfy his burden of affirmatively showing by the record that the criteria for ineffective-

---

[20] See *Horne v. State*, 237 Ga. App. 844-845 (1) (517 SE2d 74) (1999).

[21] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Bridges v. State*, 195 Ga. App. 851, 852 (1) (395 SE2d 30) (1990).

[22] (Punctuation omitted.) *Crenshaw v. State*, 248 Ga. App. 505, 510 (4) (546 SE2d 890) (2001).

[23] *King v. State*, 241 Ga. App. 894, 895-896 (3) (528 SE2d 535) (2000).

ness were met.[24] The trial court's finding that Whitehead was not denied effective assistance of counsel is thus affirmed.[25]

*Judgment affirmed. Barnes, J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 6, 2002.

*Walker L. Chandler*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Charles E. Rooks, Assistant District Attorney*, for appellee.

---

[24] See *Elrod v. State*, 222 Ga. App. 704, 708 (3) (b) (475 SE2d 710) (1996).
[25] See *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).