**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 3, 2013**

# In the Court of Appeals of Georgia

A13A0244. FELTON v. THE STATE.

ANDREWS, Presiding Judge.

Jermoris Felton appeals his conviction for possession of marijuana. He contends the trial court erred by denying his motion to suppress evidence seized from his person in violation of his right to be free from unreasonable search and seizure. We agree and reverse his conviction.

1. Felton's sole enumeration of error alleges that the trial court erred by denying his motion to suppress. He contends that the facts of this case do not support a brief investigative stop, the pat-down was unwarranted, and the removal of the item from his pocket exceeded the officer's authority. When reviewing a trial court's decision on a motion to suppress, an appellate court's

responsibility is to ensure that there was a substantial basis for the decision. We are guided by three principles when interpreting the trial court's determination of the facts. When considering such a motion the trial court is the trier of facts. The court hears the evidence, and when its findings are based upon conflicting evidence, they are analogous to a jury verdict and must not be disturbed by an appellate court if any evidence supports them. Also, the trial court's decisions regarding questions of fact and credibility of witnesses must be accepted unless they are clearly erroneous, and the evidence must be construed most favorably toward upholding the trial court's findings and judgment. Additionally, when the evidence is uncontroverted and no question about a witness's credibility exists, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) *Hobbs v. State*, 272 Ga. App. 148 (1) (611 SE2d 775) (2005). To the extent this issue concerns mixed questions of fact and law, we will accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts. *Morrow v. State*, 272 Ga. 691, 693 (1) (532 SE2d 78) (2000). "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." *Whitehead v. State*, 258 Ga. App. 271, 273 (1) (574 SE2d 351) (2002)." As the evidence is uncontroverted and no question about witness credibility

is present, the trial court's ruling on Felton's motion to suppress is subject to a de novo appellate review.

Viewed in this manner, the evidence shows that a police officer responded to a dispatch based upon a 911 call from a concerned citizen about a violent, verbal dispute between a man and a woman in a white car parked in a convenience store parking lot. He was dispatched to investigate "a domestic disturbance in progress." When the officer arrived at the location, however, he found a white car stopped in the turn lane of the roadway with a woman behind the steering wheel. A man, later identified as Felton, was walking near the car toward the convenience store. The officer directed the woman to drive the car into the store's parking lot, and motioned to Felton to come to the police car so the officer could talk to him about what was going on. Felton did not immediately comply with the officer's request, but ultimately did so. The officer was investigating a domestic disturbance in progress, but he did not see Felton commit any crime.

About this time, a second officer arrived on the scene, and the first officer directed Felton to talk to the second officer. The first officer then spoke with the woman in the car, who was crying. The officers did not have a clue what was going on. The first officer then spoke with the concerned citizen who told him she was

3

pumping gas when she heard the two in a "heated argument verbally; " she said it was so volatile she decided to call 911.

The second officer spoke with Felton who told him that he and his girlfriend had been arguing. Felton kept putting his hand in his coat pocket. The officer repeatedly ordered Felton to remove his hand from his coat pocket and noted that Felton was becoming increasingly nervous. Felton was very hesitant to answer any of the questions he was asked; he was very hesitant and fidgety. At first, Felton did not take his hands out of his pockets even though he was directed to do so, but he ultimately did so. From the officer's experience, people who are hesitant to remove their hands from their pockets might be hiding something. As a result of his concern that Felton might be hiding something in his pockets, the officer asked Felton if he could pat him down for "any weapons or illegal items and when Felton did not respond, he patted down Felton. Felton had not been aggressive before this and his demeanor was quiet. The officer stated it was a *Terry* frisk.

The officer felt a large item in Felton's right front pocket. The officer asked Felton what the item was and Felton responded he did not know. The officer then asked Felton if he could remove the item and Felton answered, "I don't care." The officer removed the item from Felton's pocket and found a purple Crown Royal cloth

4

bag. The officer testified that as soon as he pulled it out, he noticed the "strong, distinct odor of marijuana. Felton tried to walk away, but was detained by the officer.

At the conclusion of the hearing, the trial court denied the motion to suppress. The trial court found that the officers' detention of Felton was authorized because the officers were attempting to ascertain what was going on. In regard to the pat-down, the trial court concluded that if officers had "a right to detain temporarily, then they have a right to pat down to protect themselves." Based upon this conclusion, the court found that the pat-down was authorized.

Later, upon Felton's motion for the trial court to reconsider this ruling, the trial court issued a written order denying the motion. The trial court found that the 911 call gave the officers "reasonable, articulable suspicion and a particularized and objective basis for suspecting [Felton] was, or was about to be, engaged in criminal activity." Thus, the court found that Felton's brief detainment was a second tier *Terry* stop.

Addressing Felton's allegation that the search and removal of the bag from Felton's pocket was unauthorized, the trial court found that a *Terry* pat-down permits an officer to look for weapons only, and the officer is not authorized to search for or remove anything other than weapons. During the pat-down, the officer felt a large soft item in Felton's pocket. When the officer requested permission to remove the item,

5

Felton's response of "I don't care" consented to the officer's removal of the object. The trial court denied the motion for reconsideration. After Felton was convicted of possession of marijuana, this appeal followed.

2. Felton argues that the facts of this case do not support a *Terry* stop because there was no evidence Felton was engaged in or about to engage in criminal activity. A *Terry* stop is a "brief *stop* of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, [and] may be most reasonable in light of the facts known to the officer at the time. [Cits.]" *Stiggers v. State*, 151 Ga. App. 546, 547 (260 SE2d 413) (1979).

> The U. S. Supreme Court recognized the difficulty in defining 'the elusive concept of what cause is sufficient to authorize police to stop a person,' and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of [the Supreme Court's] Fourth Amendment jurisprudence.' *Terry v. Ohio*, [392 U. S. 1, 2, n. 18 (88 SCt 1868, 20 LE2d 889) (1968)].

*Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994). Thus,

6

[b]alancing the estimable right of personal security against the interest of effective law enforcement, the U. S. Supreme Court has determined that a law enforcement officer may conduct a constitutional investigatory stop of an individual when the officer is able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion. Over a decade later, the Court restated the standard when it held that an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. The Cortez Court went on to elaborate: based upon the totality of the circumstances, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. Thus, the inferences and deductions of a trained officer, drawn from objective observation, must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citation and punctuation omitted.) *Postell v. State*, 264 Ga. 249 (443 SE2d 628) (1994). The reasons justifying an investigatory stop need not rise to the level of probable cause, but must be more than a mere hunch and must not be arbitrary or harassing. *State v. White*, 197 Ga. App. 426, 427 (398 SE2d 778) (1990). Indeed, the officer's action "must be justified by specific and articulable facts which, taken

together with rational inferences from those facts, reasonably warrant that intrusion." *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006). Additionally, the officer "must have some basis from which the court can determine that the detention was neither arbitrary nor harassing." Id.

In this case the basis for the stop was clear and the complaint by the concerned citizen, who remained on the scene, provided ample basis for concluding that the officers' actions were neither arbitrary nor harassing. Further, although the evidence did not show that Felton was engaging in criminal activity at the time, based upon the complaint, the officers were authorized to detain him briefly to determine whether he was about to engage in such activity.

3. Felton contends the trial court erred by finding that the pat-down was authorized. We agree. The State bears the burden of proving the lawfulness of a pat-down search for weapons. *Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010). When conducting an investigatory stop, an officer is entitled to conduct a limited pat-down of the suspect for weapons if the officer reasonably believes that the suspect poses a threat to his safety or that of others. *Terry*, 392 U. S. at 28-31. It is not required that the officer "be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the

belief that his safety or that of others was in danger." Id. at 27. A pat-down for weapons is authorized "*only* if the officer has a reasonable belief preparatory to an intended pat-down that the suspect is armed and presents a danger to the officer or others." (Punctuation and footnote omitted; emphasis in original.) *Ramsey v. State*, 306 Ga. App. 726, 728 (703 SE2d 339) (2010).

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York*, 392 U. S. 40, 64 (88 SCt 1889, 20 LE2d 917) (1968)."[T]he issue is whether the officer has objectively reasonable grounds to believe or suspect that the person may be armed." *State v. Kipple*, 294 Ga. App. 420, 421 (1) (669 SE2d 185) (2008).

Here the officer who conducted the pat-down of Felton's outer clothing never testified that he believed that Felton was armed and dangerous. Instead, he merely asserted that he believed that people who kept their hands in their pockets might be hiding something. Accordingly, the State failed to establish that the officer was

9

authorized to conduct a pat-down of Felton, and the trial court's conclusion that because the officers were conducting an authorized *Terry* stop, they were authorized to conduct a pat-down of Felton's person is contrary to our law. Therefore, the trial court erred by denying the motion to suppress the evidence seized as a result of the pat-down.

4. Felton further contends that he did not consent to be searched when the officer asked him for permission to conduct a pat-down, and the evidence shows that when asked for permission to conduct the pat-down, Felton did not respond. Based on this evidence, the trial court found that Felton "neither consented nor objected to the pat-down." As this finding is not clearly erroneous, we are obligated to accept it.

Pretermitting whether Felton consented to the officer searching his pocket to remove the item the officer found in the pat-down by saying "I don't care," is the fact that the seizure of the Crown Royal bag and its contents was the product of the illegal pat-down. Therefore, the initial illegal pat-down tainted all evidence obtained as a result thereof. *Clare v. State*, 135 Ga. App. 281, 285-286 (5) (217 SE2d 638) (1975).

Accordingly, for the reasons explained above, we find that officer was not authorized to pat down Felton, and the trial court erred by denying Felton's motion to suppress.

10

*Judgment reversed. McMillian, J., concurs. Dillard, J., concurs in Divisions 1 and 2, and in the judgment.*

A13A0244.  FELTON v. THE STATE.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only as to Divisions 3 and 4 because I do not agree with all that is said in the majority opinion. As such, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent as to those divisions. *See* Court of Appeals Rule 33 (a).